William P. Deni, Jr.
J. Brugh Lower
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4500
Fax: (973) 596-0545

*Attorneys for Plaintiff*
*Sage Products, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SAGE PRODUCTS, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY,<br><br>          Defendant. | Civil Action No. 20-8000<br><br>*Document Electronically Filed* |

<u>**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL**</u>

Plaintiff Sage Products, LLC ("Sage" or "Plaintiff"), through its counsel, hereby demands a jury trial and alleges the following against Defendant Becton, Dickinson and Company ("Becton Dickinson" or "Defendant"):

<u>**THE PARTIES**</u>

1.      Plaintiff Sage is a Delaware corporation and has a place of business at 3909 Three Oaks Road, Cary, IL 60013.

2.      On information and belief, Defendant Becton Dickinson is a New Jersey corporation with its principal place of business located at 1 Becton Drive, Franklin Lakes, New Jersey 07417.

**JURISDICTION AND VENUE**

3.      This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. §1, et. seq., including 35 U.S.C. § 271, and seeks damages and injunctive relief including as provided in 35 U.S.C. §§ 281 and 283-285.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction, general and specific, over Becton Dickinson because Becton Dickinson has sufficient minimum contacts to establish personal jurisdiction in this district. Becton Dickinson is a New Jersey corporation that resides in this district. Becton Dickinson has a regular and established place of business in this judicial district and has done and is doing substantial business in this judicial district, both generally and, on information and belief, with respect to the allegations in this Complaint, including Defendant's one or more acts of infringement in this judicial district. Defendant has purposefully availed itself of the privilege of conducting activities in this judicial district and invoked the benefits and protection of this judicial district by having substantial contacts and regularly and purposefully conducting business in this judicial district, both generally and, upon information and belief, with respect to the allegations in this Complaint.

6.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), 1391(c), and/or 1400(b).

**FACTUAL BACKGROUND**

7.      Sage is a leader in the development, design, and manufacture of innovative healthcare solutions including devices and products that address hospital-acquired conditions such as ventilator-associated conditions, skin injury due to incontinence, pressure injuries, surgical site

infections, and healthcare worker injury across the continuum of care.  From the acute care setting to the skilled nursing and long-term care setting, as well as continued care at home, Sage creates products that make caregiving easier and provide positive clinical outcomes. For decades, Sage has successfully developed and produced innovative products that have significantly improved outcomes for patients and caregivers, while improving efficiency for healthcare facilities.

8.      Among its many products, Sage manufactures and sells a pre-operative skin preparation product, the Sage 2% Chlorhexidine Gluconate Cloths. These cloths are used as topical disinfectants, to clean and disinfect a skin site on a patient, usually in the context of various medical procedures. The products include chlorhexidine gluconate ("CHG"), which is an antiseptic agent. Sage's skin-friendly, easy-to-use CHG cloths are fast-acting, provide broad-spectrum protection, and the 2% CHG stays on a patient's skin longer than soap. Studies show that using a CHG cloth as part of a chin-to-toe application the night before and morning of surgery leads to a reduction in surgical site infections.

9.      Over the years, other entities also distributed products using chlorhexidine as a topical antiseptic. In the early 2010s, due to incidents of microbial contamination in topical antiseptic products, the industry became focused on providing fully sterile pre-operative chlorhexidine products. This was a challenge, however, because while the chlorhexidine composition itself could act as an antiseptic, it was understood at that time that creating sterilized chlorhexidine products posed many technical difficulties.

10.     In November 2013, the FDA issued new labeling guidelines for topical antiseptic products, requiring manufacturers to indicate whether their antiseptic products are sterile or non-sterile.

3

*The Patents-in-Suit*

11.     Sage scientists began working on solving the problem of product sterility and invented novel methods of sterilizing chlorhexidine articles as well as novel sterilized chlorhexidine products for topical disinfection that comprise a sterilized CHG composition. Sage received several patents on its novel sterilized chlorhexidine products and methods for sterilizing and using those products.

12.     On September 3, 2019, the United States Patent and Trademark Office ("the USPTO") duly and legally issued U.S. Patent No. 10,398,642 ("the 642 patent"), which is titled "Sterilized Chlorhexidine Article and Method of Sterilizing a Chlorhexidine Article."  Sage is the owner by assignment of the 642 patent.  A true and accurate copy of the 642 patent is attached hereto as Exhibit 1.

13.     On June 23, 2020, the USPTO duly and legally issued U.S. Patent No. 10,688,067 ("the 067 patent"), which is titled "Sterilized Chlorhexidine Article and Method of Sterilizing a Chlorhexidine Article."  Sage is the owner by assignment of the 067 patent.  A true and accurate copy of the 067 patent is attached hereto as Exhibit 2.

14.     The 642 and 067 patents disclose and claim sterilized chlorhexidine products for topical disinfection as well as methods of using such products.

15.     The 642 patent claims priority to a provisional patent application that was filed on November 25, 2015, and is a continuation of a patent application filed on November 23, 2016.

16.     The 067 patent claims priority to the provisional patent application that was filed on November 25, 2015 as well as the patent application filed on November 23, 2016, and is a continuation of the application that resulted in the 642 patent.

*Defendant's Accused Product*

17.     Despite Sage's patents, Becton Dickinson recently released its own sterilized chlorhexidine products.

18.     Defendant Becton Dickinson makes, uses, offers to sell, sells, exports, and/or imports sterilized chlorhexidine products including various versions of the ChloraPrep Patient Preoperative Skin Preparation with Sterile Solution such as 1 mL, 3 mL, 10.5 mL, and 26 mL ChloraPrep Clear with sterile solution, 1.5 mL ChloraPrep FREPP Clear with sterile solution, and 3 mL, 10.5 mL, and 26 ChloraPrep Hi-Lite Orange with sterile solution (hereinafter collectively referred to as "the Accused Sterile ChloraPrep Products").

19.     Becton Dickinson also uses sterilized chlorhexidine products including the Accused Sterile ChloraPrep Products and encourages others to use those products.

20.     An image showing examples of Becton Dickinson's sterilized chlorhexidine products is below:



**FIGURE 1**

5

21.     In early April 2019, Becton Dickinson received FDA approval for sterilized chlorhexidine products including Accused Sterile ChloraPrep Products. A true and accurate copy of labels for Becton Dickinson's sterile ChloraPrep products are attached hereto as Exhibit 3.

22.     On or about April 30, 2019, Becton Dickinson issued a press release stating "BD Received FDA Approval for Fully Sterile Chlorhexidine Gluconate Antiseptic Skin Preparation." A true and accurate copy of the press release is attached hereto as Exhibit 4.

23.     Becton Dickinson advertised its new "fully sterile" products through various trade outlets.  For example, Becton Dickinson has placed advertisements describing "BD ChloraPrep™ Patient Preoperative Skin Preparation With Sterile Solution And An All-New Sterility Assurance Level of $10^{-6}$."

24.     Information describing the Accused Sterile ChloraPrep Products and how to use them are available on Becton Dickinson's website. A true and accurate print-out of Becton Dickinson's website relating to the Accused Sterile ChloraPrep Products as of the filing date of this Complaint is attached hereto as Exhibit 5 (hereinafter "Becton Dickinson's website"). An image from Becton Dickinson's website showing an example of one of the sterilized products is provided in Figure 2 below:



**FIGURE 2**

25.     An image showing the use of a sterilized ChloraPrep product from Becton Dickinson's website is shown in Figure 3 below:



**FIGURE 3**

26.     A Becton Dickinson brochure describing its sterilized chlorhexidine products is attached as Exhibit 6. The document, which is available online, is titled "Elevating the standard. New BD ChloraPrep™ patient preoperative skin preparation with sterile solution."

27.     As stated in Becton Dickinson's FDA-approved labels, the Accused Sterile ChloraPrep Products contain a solution of 2% w/v chlorhexidine gluconate and 70% v/v isopropyl alcohol. The unopened products are sterile and contain sterilized applicators and sterile solution. An image from Becton Dickinson's FDA-approved labels describing the sterilized chlorhexidine gluconate solution and sterile applicator is shown in Figure 4 below:



**FIGURE 4**

28.     Becton Dickinson instructs users such as its customers how to use the Accused Sterile ChloraPrep Products. For example, Becton Dickinson's product labels provide directions for use, detailing how to use the sterilized chlorhexidine products. Also for example, Becton Dickinson instructs users to remove the sterilized product from the packaging and then directs users to pinch the wings on the applicator to compromise an ampule within the applicator containing the sterilized antiseptic solution.  Becton Dickinson directs users to then wet the sponge on the product by pressing it against a patient's skin. Then, Becton Dickinson directs users to apply sterilized antiseptic solution to patients' skin.

**COUNT I**
**INFRINGEMENT OF THE 642 PATENT**

29.     The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

30.     Sage owns all right, title, and interest in and to the 642 Patent.

31.     Defendant is aware of Sage's products and has referenced them in its own patent applications. Upon information and belief, Defendant reviews patents relating to sterilizing CHG, sterilized CHG products and methods for sterilizing CHG products.  Defendant has had knowledge of the 642 patent at least as early as the filing date of this Complaint.

32.     Plaintiff has given actual notice to Defendant of its infringement of the 642 patent by service of this Complaint.

33.     Defendant has directly infringed, and continues to directly infringe, literally or under the doctrine of equivalents, claims of the 642 patent including at least claims 1 and 12 of the 642 patent by making, using, offering for sale, selling, and/or importing into the United States sterilized chlorhexidine products including the Accused Sterile ChloraPrep Products, in violation of 35 U.S.C. § 271.

34.     The Accused Sterile ChloraPrep Products and the use of those products includes or meets every single element of at least claims 1 and 12 of the 642 patent, literally or under the doctrine of equivalents.

35.     The Accused Sterile ChloraPrep Products are sterilized chlorhexidine products for topical disinfection. Becton Dickinson's press release states that "BD Receives FDA Approval for Fully Sterile Chlorhexidine Gluconate Antiseptic Skin Preparation." Becton Dickinson's website also states "CHG skin antiseptic care," "sterile solution," and "sterile applicator," and shows an example of one of the products being used for topical disinfection in the below image:



**FIGURE 3**

36.     The Accused Sterile ChloraPrep Products comprise a sterilized chlorhexidine gluconate composition. The Accused Sterile ChloraPrep Products include a "sterile solution" including 2% w/v chlorhexidine gluconate. This is shown for example in Defendant's product labels.

37.     The Accused Sterile ChloraPrep Products comprise an applicator for facilitating application of the sterilized chlorhexidine composition. For example, Defendant's labels describe an applicator for facilitating application of the sterilized chlorhexidine composition, stating "remove applicator from package . . . hold the applicator with the sponge down . . . wet the sponge by pressing and releasing the sponge against the treatment area until liquid is visible on the skin . . . completely wet the treatment area with antiseptic." Becton Dickinson's website also states "[t]he sterile, single-use applicator facilitates aseptic 'no touch' technique . . . ."  An example of an accused sterilized chlorhexidine product, including the applicator, is shown in the image below:



**FIGURE 5**

38.     The Accused Sterile ChloraPrep Products include a receptacle containing the sterilized chlorhexidine gluconate composition to provide the sterilized composition to impregnate the applicator when the receptacle or a barrier is compromised. The Accused Sterile ChloraPrep Products further include a barrier configured to be compromised to impregnate the applicator with the sterilized chlorhexidine gluconate composition. As described above, the Accused Sterile Solution ChloraPrep Products include an applicator with sterilized CHG. The products include an ampule containing sterilized CHG that, when compromised, impregnates the applicator with the sterilized composition. For example, Defendant's labels instruct users to compromise the ampule containing the sterilized CHG to impregnate the applicator, stating "hold the applicator with the sponge down. Pinch wings only once to activate the ampule and release the antiseptic. . . wet the sponge by pressing and releasing the sponge against the treatment area until liquid is visible on the skin." Figure 6 below from Becton Dickinson's website shows the wings that are pinched to compromise the ampule and impregnate the applicator.



**FIGURE 6**

39.     The sterilized CHG composition in the Accused Sterile ChloraPrep Products includes chlorhexidine gluconate and alcohol. Specifically, the sterile solution includes 2% w/v chlorhexidine gluconate (CHG) and 70% v/v isopropyl alcohol, as shown for example in Exhibit 3.

40.     Defendant's use of the Accused Sterile ChloraPrep Products, including during testing, also meets each and every limitation of at least independent claim 12 of the 642 patent, and Defendant's use of the products as well as customers' use of the products directly infringes claim 12 of the 642 patent under 35 U.S.C § 271(a).

41.     The use of the Accused Sterile ChloraPrep Products by Defendant and its customers practices the claimed method of using a sterilized chlorhexidine article including by providing a sterilized chlorhexidine article. As described above, the Accused Sterile Solution Products are sterilized chlorhexidine articles, and using one of the products employs the claimed method. For example, Defendant's labels instruct users to "remove applicator from package," which contains "chlorhexidine gluconate (CHG) . . . Sterile Solution."

42.     As discussed above, each of the Accused Sterile Solution ChloraPrep Products comprise a sterilized chlorhexidine gluconate composition comprising chlorhexidine gluconate

and alcohol, an applicator for facilitating application of the sterilized chlorhexidine, a receptacle containing the sterilized CHG composition, and a barrier between the sterilized CHG composition and the applicator.

43.    As discussed above, the use of the Accused Sterile ChloraPrep Products by Defendant and its customers includes compromising the receptacle to provide the sterilized chlorhexidine gluconate composition to impregnate the applicator and compromising the barrier to impregnate the applicator with the sterilized CHG composition. Defendant instructs users to "hold the applicator with the sponge down. Pinch wings only once to activate the ampule and release the antiseptic. . . . wet the sponge by pressing and releasing the sponge against the treatment area until liquid is visible on the skin." Becton Dickinson's website also shows the wings being pinched to compromise the ampule and impregnate the applicator, as shown in Figure 6 below:



**FIGURE 6**

44.    The use of the Accused Sterile ChloraPrep Products by Defendant and its customers includes applying the sterilized chlorhexidine gluconate composition to a patient's skin. Defendant instructs users to use the applicator to "completely wet the treatment area with

13

antiseptic." Becton Dickinson's website also illustrates applying the sterilized CHG composition to a patient's skin, including in the below photograph:



**FIGURE 3**

45.     Defendant also has indirectly infringed and continues to indirectly infringe claims of the 642 patent including at least claims 1 and 12 by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

46.     Defendant has directed and directs third parties, including customers, in the United States to use the Accused Sterile ChloraPrep Products, which directly infringe the 642 patent and which Defendant knows infringe the 642 patent. Defendant provides instructions to third parties including customers on how to use the Accused Sterile ChloraPrep Products in a manner that Defendant knows practices the claimed inventions. For example, as described above, Defendant's product labels and instructions describe how to use the Accused Sterile ChloraPrep Products and highlight the infringing features to customers.

47.     On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intends to induce infringement of the 642 patent by its customers and users of the Accused Sterile ChloraPrep Products and has knowledge that the inducing acts would cause

14

infringement or is willfully blind to the possibility that their inducing acts would cause infringement.

48.     At least as early as Defendant's receipt of this Complaint, Defendant knew or was willfully blind to how the Accused Sterile ChloraPrep Products infringe the 642 Patent. At least as early as Defendant's receipt of this Complaint, Defendant has been and is actively inducing infringement of the 642 patent by actively and knowingly inducing third parties such as customers to commit acts that Defendant knows constitute infringement of the 642 Patent.

49.     As a result, on information and belief, Defendant actively and knowingly intended to aid, abet, direct, encourage, or otherwise instruct such third parties by Defendant's sale of the Accused Sterile ChloraPrep Products and instructions to infringe the 642 patent. Defendant encourages infringement by customers at least by providing product directions that instruct users on how to use the sterilized chlorhexidine products. For example, the labels provide instructions for the use of the products, including the steps of providing the claimed sterilized chlorhexidine article, compromising the receptacle to provide the sterilized chlorhexidine gluconate composition to impregnate the applicator and compromising the barrier to impregnate the applicator with the sterilized CHG composition, and applying the sterilized chlorhexidine gluconate composition to a patient's skin. By continuing to provide instruction to users on how to use the Accused Sterile ChloraPrep Products in the manner described in the claims of the 642 Patent, Defendant has and continues to specifically intend to induce infringement of the 642 Patent.

50.     On information and belief, despite Defendant's knowledge of the 642 patent and knowledge that customers will necessarily infringe the 642 patent when the Accused Sterile ChloraPrep Products are used as instructed, Defendant continues to encourage infringement.

51.     Defendant also has and continues to intentionally commit contributory infringement by offering to sell and/or selling within the United States sterilized chlorhexidine products that are covered by the 642 Patent, including the Accused Sterile ChloraPrep Products, which is a material part of the invention, in violation of 35 U.S.C. §271(c). At least as early as Defendant's receipt of this Complaint, Defendant knew that the Accused Sterile ChloraPrep Products are especially made or especially adapted for use in infringing the 642 patent. The Accused Sterile ChloraPrep Products are not staple articles of commerce suitable for substantial non-infringing use. By continuing to provide these products, Defendants have and continue to specifically intend to contributorily infringe the 642 Patent.

52.     Defendant has committed and continues to commit all of the above acts of infringement without license or authorization.

53.     The requirements of 35 U.S.C. § 287 have been met with respect to the 642 Patent.

54.     As a result of Defendant's infringement of the 642 patent, Plaintiff has suffered damages and will continue to suffer damages.

55.     The injury to Sage is irreparable and will continue unless and until Defendant is enjoined from further infringement. Defendant's wrongful conduct has caused and will continue to cause Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiff's patented inventions. On information and belief, Defendant and others will continue to infringe the 642 patent unless permanently enjoined by the Court. Unless a permanent injunction is issued enjoining Defendant and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the 642 Patent, Sage will be greatly and irreparably harmed.

## COUNT II
## INFRINGEMENT OF THE 067 PATENT

56.     The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

57.     Sage owns all right, title, and interest in and to the 067 Patent.

58.     Defendant is aware of Sage's products and has referenced them in its own patent applications. Upon information and belief, Defendant reviews patents relating to sterilizing CHG, sterilized CHG products and methods for sterilizing CHG products. Defendant has had knowledge of the 067 patent at least as early as the filing date of this Complaint.

59.     Plaintiff has given actual notice to Defendant of its infringement of the 067 patent by service of this Complaint.

60.     Defendant has directly infringed, and continues to directly infringe, literally or under the doctrine of equivalents, claims of the 067 patent including at least claims 1 and 12 of the 067 patent by making, using, offering for sale, selling, and/or importing into the United States sterilized chlorhexidine products including the Accused Sterile ChloraPrep Products, in violation of 35 U.S.C. § 271.

61.     The Accused Sterile ChloraPrep Products and the use of those products includes or meets every single element of at least claims 1 and 12 of the 067 patent, literally or under the doctrine of equivalents.

62.     As discussed in Count I above which is incorporated by reference, the Accused Sterile ChloraPrep Products are sterilized chlorhexidine products for topical disinfection that comprise a sterilized CHG composition that includes CHG and alcohol as well as an applicator for facilitating application of the sterilized CHG composition. The Accused Sterile ChloraPrep

Products include a barrier configured to be compromised to impregnate the applicator with the sterilized chlorhexidine gluconate composition.

63.     Defendant's use of the Accused Sterile ChloraPrep Products, including during testing, also meets each and every limitation of at least independent claim 12 of the 067 patent, and Defendant's use of the products as well as customers' use of the products directly infringes claim 12 of the 067 patent under 35 U.S.C § 271(a).

64.     As discussed above in Count I, the use of the Accused Sterile ChloraPrep Products by Defendant and its customers practices the claimed method of using a sterilized chlorhexidine article including by providing the claimed sterilized chlorhexidine article. As described above, the Accused Sterile Solution Products are sterilized chlorhexidine articles, and using one of the products employs the claimed method.

65.     Defendant also has indirectly infringed and continues to indirectly infringe claims of the 067 patent including at least claims 1 and 12 by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

66.     Defendant has directed and directs third parties, including customers, in the United States to use the Accused Sterile ChloraPrep Products, which directly infringe the 067 patent and which Defendant knows infringe the 067 patent. Defendant provides instructions to third parties including customers on how to use the Accused Sterile ChloraPrep Products in a manner that Defendant knows practices the claimed inventions. For example, as described above in Count I, Defendant's product labels and instructions describe how to use the Accused Sterile ChloraPrep Products and highlight the infringing features to customers.

67.     On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intends to induce infringement of the 067 patent by its customers and users of the

Accused Sterile ChloraPrep Products and has knowledge that the inducing acts would cause infringement or is willfully blind to the possibility that their inducing acts would cause infringement.

68.     At least as early as Defendant's receipt of this Complaint, Defendant knew or was willfully blind to how the Accused Sterile ChloraPrep Products infringe the 067 Patent. At least as early as Defendant's receipt of this Complaint, Defendant has been and is actively inducing infringement of the 067 patent by actively and knowingly inducing third parties such as customers to commit acts that Defendant knows constitute infringement of the 067 Patent.

69.     As a result, on information and belief, Defendant actively and knowingly intended to aid, abet, direct, encourage, or otherwise instruct such third parties by Defendant's sale of the Accused Sterile ChloraPrep Products and instructions to infringe the 067 patent. As discussed above in Count I, Defendant encourages infringement by customers at least by providing product directions that instruct users on how to use the sterilized chlorhexidine products. By continuing to provide instruction to users on how to use the Accused Sterile ChloraPrep Products in the manner described in the claims of the 067 Patent, Defendant has and continues to specifically intend to induce infringement of the 067 Patent.

70.     On information and belief, despite Defendant's knowledge of the 067 patent and knowledge that customers will necessarily infringe the 067 patent when the Accused Sterile ChloraPrep Products are used as instructed, Defendant continues to encourage infringement.

71.     Defendant also has and continues to intentionally commit contributory infringement by offering to sell and/or selling within the United States sterilized chlorhexidine products that are covered by the 067 Patent, including the Accused Sterile ChloraPrep Products, which is a material part of the invention, in violation of 35 U.S.C. §271(c). At least as early as

Defendant's receipt of this Complaint, Defendant knew that the Accused Sterile ChloraPrep Products are especially made or especially adapted for use in infringing the 067 patent. The Accused Sterile ChloraPrep Products are not staple articles of commerce suitable for substantial non-infringing use. By continuing to provide these products, Defendants have and continue to specifically intend to contributorily infringe the 067 Patent.

72.     Defendant has committed and continues to commit all of the above acts of infringement without license or authorization.

73.     The requirements of 35 U.S.C. § 287 have been met with respect to the 067 Patent.

74.     As a result of Defendant's infringement of the 067 patent, Plaintiff has suffered damages and will continue to suffer damages.

75.     The injury to Sage is irreparable and will continue unless and until Defendants are enjoined from further infringement. Defendant's wrongful conduct has caused and will continue to cause Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiff's patented inventions. On information and belief, Defendant and others will continue to infringe the 067 patent unless permanently enjoined by the Court. Unless a permanent injunction is issued enjoining Defendant and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the 067 Patent, Sage will be greatly and irreparably harmed.

## **JURY DEMAND**

76.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and against Defendant as follows:

A.      That U.S. Patent Nos. 10,398,642 and 10,688,067 be judged valid, enforceable, and infringed by Defendant;

B.      That the Court permanently enjoin Defendant and its subsidiaries, parents, divisions, directors, officers, agents, servants, employees and all other persons in active concert or privity or in participation with them, from making, using, selling, offering for sale, importing, or distributing any infringing sterilized chlorhexidine products and from infringing, inducing infringement, and contributing to the infringement of U.S. Patent Nos. 10,398,642 and 10,688,067, and enjoining Defendant from assisting, inducing, or aiding or abetting any other person or entity in engaging in infringing U.S. Patent Nos. 10,398,642 and 10,688,067;

C.      That the Court enter an order requiring Defendant to file with the Court and serve on Plaintiff, within thirty (30) days after service of the Court's order as herein prayed, a report (or other form of proof) in writing under oath setting forth in detail the manner and form in which Defendant has complied with the Court's injunction;

D.      That the Court enter judgment for Plaintiff and against Defendant and award Plaintiff all damages, together with interest and costs, for Defendant's infringement of U.S. Patent Nos. 10,398,642 and 10,688,067;

E.      That the Court enter judgment and an order requiring Defendant to provide accountings and to pay supplemental damages to Plaintiff including without limitation prejudgment and postjudgment interest;

F.      A judgment that this case is exceptional and an award to Plaintiff of its costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes and rules in common law that would be appropriate; and

G.      That Plaintiff be awarded such other and further relief as this Court may deem just and proper under the circumstances.

Dated: June 30, 2020                                  s/ William P. Deni, Jr.
       Newark, New Jersey                             William P. Deni, Jr.
                                                      J. Brugh Lower
                                                      **GIBBONS P.C.**
                                                      One Gateway Center
                                                      Newark, New Jersey 07102
                                                      Tel: (973) 596-4500
                                                      Fax: (973) 596-0545
                                                      wdeni@gibbonslaw.com
                                                      jlower@gibbonslaw.com

Of Counsel:

Robert A. Surrette (*pro hac vice* to be submitted)
Sandra A. Frantzen (*pro hac vice* to be submitted)
Christopher M. Scharff (*pro hac vice* to be submitted)
Benjamin J. Mahon (*pro hac vice* to be submitted)
**MCANDREWS, HELD & MALLOY, LTD**
500 West Madison Street
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
cscharff@mcandrews-ip.com
bmahon@mcandrews-ip.com